UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:21-CR-453 AGF/PLC |
| | ) |
| ALLEN WILLIAMS, | ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation

This matter is before the Court following an evidentiary hearing on Defendant's Motion to Suppress Evidence and Statements [ECF No. 31].[1] The Government filed a response in opposition [ECF No. 39]. The Court held an evidentiary hearing. Thereafter, the parties filed post-hearing briefs [ECF Nos. 48 and 53]. As grounds for his motion to suppress, Defendant contends that law enforcement lacked reasonable suspicion to support a traffic stop and lacked probable cause to conduct a warrantless search of Defendant's vehicle. The Government opposes Defendant's motion on the grounds that: (1) law enforcement lawfully stopped Defendant's vehicle; (2) law enforcement properly extended the traffic stop based on the smell of marijuana and presence of a burnt marijuana joint; and (3) alternatively, law enforcement validly conducted an inventory search following Defendant's arrest.

## Factual Background

A. **Evidence adduced at hearing**

1. **Testimony of Officer Jonathan Alfaro**

---

[1] Defendant seeks suppression of guns and drugs seized from his vehicle and "any simultaneous and subsequent statements."

The Government called Jonathan Alfaro, a police officer with Troy, Missouri in November 2020. On November 10, 2020, Officer Alfaro was patrolling in a police vehicle. Officer Alfaro concentrated his efforts on the Highway 47 and 61 corridor and in particular, two gas stations and a hotel, the Troy Inn and Suites. Both locations were known to be the source of "problems."

Around 3:00 a.m. on November 10, Officer Alfaro observed a black Volkswagen travelling at a high rate of speed eastbound on Highway 47. Officer Alfaro, who had been travelling westbound on Highway 47, turned around his vehicle and began following the black Volkswagen. After travelling behind the Volkswagen for approximately 300 feet, Officer Alfaro observed the Volkswagen cross over the lane divider after making a left turn from Highway 47 on to North Lincoln Road.

Officer Alfaro continued to follow the Volkswagen going north on North Lincoln Road. After a short distance, the Volkswagen made a right turn into a liquor store parking lot on North Lincoln. Prior to turning right, the Volkswagen driver did not signal a right turn. Immediately after turning into the parking lot, the Volkswagen performed a U-turn, exited the parking lot and travelled southbound on North Lincoln.

Officer Alfaro followed the Volkswagen as it turned from North Lincoln on to eastbound Highway 47. As the Volkswagen travelled through the intersection of North Lincoln and Highway 47, Officer Alfaro activated his lights and siren and initiated a traffic stop. After continuing to travel approximately a block, the Volkswagen stopped.

Using a bullhorn, Officer Alfaro instructed the driver of the Volkswagen to turn on to Merlin Drive from Highway 47. The driver pulled on to Merlin Drive and stopped.

Officer Alfaro exited his vehicle and approached the Volkswagen. As he approached the vehicle, Officer Alfaro noticed the driver "had his head out of the window looking back" and was

talking to Officer Alfaro. Officer Alfaro viewed the driver's behavior as untypical because, in his experience, most drivers stopped their vehicles and waited for the officer to approach the vehicle.

When he reached the Volkswagen, Officer Alfaro asked the driver for identification. The driver did not have a driver's license or any other identification. The driver, however, provided verbal identification. The driver identified himself as Allen Williams, Defendant in this case.

When Officer Alfaro initially interacted with Defendant, Defendant was nervous and sweating. Officer Alfaro also smelled the odor of "freshly burnt marijuana" and noticed the burnt marijuana cigarette ends on the center console of the vehicle.

Officer Alfaro returned to his vehicle to verify the information Defendant provided. Officer Alfaro learned that Defendant's driver's license had expired. Officer Alfaro returned to Defendant's vehicle accompanied by Officer LaGarce, also a Troy police officer. Officer Alfaro spoke with Defendant on the driver's side and Officer LaGarce stood at the passenger-side window. Officer Alfaro confronted Defendant regarding the marijuana smell, and Defendant responded, "along the lines of it was just a little bit of weed." Defendant also held up an ashtray from his vehicle's cup holder to display the burnt ends or remnants of a marijuana cigarette. At that point, Officer Alfaro asked Defendant to step out of the vehicle. Rather than exit the vehicle, Defendant stated, "Fuck this shit," started the vehicle and attempted to drive away.

To prevent Defendant from driving off, Officer Alfaro reached into Defendant's vehicle and grabbed his forearm. Officer LaGarce also instructed Defendant to stop and threatened to use pepper spray. Because Defendant continued his attempt to put his vehicle in drive, Officer LaGarce deployed pepper spray. Defendant ceased his resistance.

Following Officer LaGarce's use of pepper spray, Officer Alfaro removed Defendant from his vehicle. Officer Alfaro proceeded to arrest Defendant for failure to comply and resisting arrest.

3

Officer Alfaro handcuffed and searched Defendant.  Officer Alfaro also performed an inventory search of Defendant's vehicle.[2]  To perform the search, Officer Alfaro and Officer LaGarce worked together.  Officer Alfaro searched the front driver's side and Officer LaGarce searched the front passenger side.  On the front passenger seat, Officer LaGarce located a bag that contained a firearm.  Under the bag with the firearm, Officer LaGarce discovered a bag with suspected methamphetamine and a bag with suspected fentanyl.  The officers also located clear plastic bags in the car's trunk. The officers seized the suspected narcotics and firearm, and Officer Alfaro placed Defendant under arrest for additional charges, namely trafficking second degree and unlawful use of a weapon.  Thereafter, Officer Alfaro attempted to conduct an additional interview, but Defendant declined to speak to him.

Officer Alfaro testified that the Troy Police Department's patrol vehicles were not equipped with in-car cameras and that the Troy Police Department did not implement a body camera program until the "second quarter of 2021."[3]

**2. Testimony of Defendant**

Defendant travelled to Troy, Missouri November 9, 2020 because his United States probation officer had arranged job training for him in Troy. Defendant attended job training during the day on November 9.  On the evening of November 9, Defendant returned to St. Louis after

---

[2] Because of the location of Defendant's vehicle and Defendant's arrest, Officer Alfaro towed Defendant's vehicle pursuant to Troy Police Department policies requiring towing under the circumstances. Officer Alfaro also testified that he believed he had probable cause to search Defendant's vehicle.

[3] At the hearing, the Government and defense counsel represented to the Court that, despite investigation by both, neither counsel acquired dash camera or body camera footage of Defendant's arrest. The Government attached to its post-hearing brief numerous documents that appear to demonstrate the Troy Police Department purchased body cameras in 2021 (after the time frame relevant to this case).

learning that his son was injured in a school football game. Defendant accompanied his son to an emergency room in St. Louis around 10:30 p.m. on November 9.

Defendant left St. Louis to return to Troy around 1:00 a.m. on November 10. Defendant stopped at a gas station off of Highway 47 in Troy to obtain directions to a Super 8 motel where he planned to stay. While at the gas station, Defendant saw Officer Alfaro drive past and give Defendant "a racist look" before Officer Alfaro turned around and waited on the shoulder. Defendant proceeded from the gas station about two blocks down Highway 47 but apparently passed the street for the hotel. Defendant pulled into a parking lot and tried to turn around.

Defendant stated that Officer Alfaro followed him from the gas station and into the parking lot he intended to turn around in. Defendant pulled out of the parking lot onto Highway 47. Officer Alfaro instructed Defendant to pull over to the left but instead Defendant parked under a streetlight on the right-hand side of Highway 47.

Defendant denied sticking his head out of his parked vehicle. Defendant acknowledged that Officer Alfaro approached Defendant's vehicle but denied that Officer Alfaro asked for any identification. Rather, according to Defendant, Officer Alfaro stated, "You can't follow instructions, can you?" and "Where the meth at." Nevertheless, Defendant stated that he provided Officer Alfaro a Missouri identification card. Officer Alfaro returned to his vehicle and then came back to Defendant's vehicle and stated, "Your license is expired." Defendant admitted that his license was expired but stated he "got a stay from the DMV." Defendant further explained his suspension was related to failure to pay child support but he thought he had resolved the issue.

Defendant explained that he asked why he was pulled over and Officer Alfaro responded that "it didn't look like you knew where you was [sic] going." Defendant further stated that Officer Alfaro punched him and told him to raise his hands. Defendant advised that he complied with

5

Officer Alfaro but Officer Alfaro stated, "quit resisting" and proceeded to grab, punch, and choke him. Defendant claimed initially two officers were present and later "there was more than that."

Defendant testified that officers "maced me all over my body, especially in my face, tightened handcuffs on me and threw me in the back of the police car…." Defendant insisted that the entire incident was captured on "dash cam and body cam" and "exonerate[d] [him] and it prove[d] criminal conduct on them."

## Discussion

### A. Relevant Legal Principles

To comply with the Fourth Amendment, a law enforcement officer making an investigatory traffic stop does not "need probable cause" to support the stop so long as the officer "possess[es objectively] reasonable, articulable suspicion that [the] vehicle's occupants are involved in criminal activity." United States v. Magallon, 984 F.3d 1263, 1277 (8th Cir. 2021) (internal quotation marks and citation omitted). Put another way, a law enforcement officer may conduct an investigatory stop if the officer "has [not simply a hunch but] a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot[.]'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)).

It is well-settled that "any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." United States v. Jones, 275 F.3d 673, 680 (8th Cir. 2001) (emphasis in original). See also, United States v. Mallari, 334 F.3d 765, 766 (8th Cir. 2003). An officer's subjective motivations for stopping a vehicle are not relevant "even if the officer conducted a valid traffic stop as a pretense for investigating other criminal activity." United States v. Hambrick, 630 F.3d 742, 746 (8th Cir. 2011) (quoting United States v. Escamilla, 301 F.3d 877, 880 (8th Cir. 2002). If the officer has a legitimate basis to stop a driver, the officer may "conduct

6

an investigation 'reasonably related in scope to the circumstances that justified the interference in the first place.'" United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994) (en banc) (quoting United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990)). "This reasonable investigation includes asking for the driver's license and registration, requesting that the driver sit in the patrol car, and asking the driver about his destination and purpose." Id. "Moreover, 'if the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions.'" United States v. Johnson, 58 F.3d 356, 357 (8th Cir. 1995) (quoting United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993)).

To determine whether an officer has a particularized and objective basis to suspect criminal wrongdoing, a court considers the totality of the circumstances. United States v. Arvizu, 534 U.S. 266, 273 (2002); Magallon, 984 F.3d at 1277. "This process allows officers to draw on their own experience and specialized training to make inference from and deductions about the cumulative information available to them that might well elude an untrained person." Arvizu, 534 U.S. at 273 (internal quotation marks and citation omitted).

An odor of marijuana emanating from a motor vehicle provides a law enforcement officer with probable cause to search the vehicle for drugs without a warrant. United States v. Daniel, 809 F.3d 447, 448-49 (8th Cir. 2016) (warrantless search of motor vehicle was supported by the smell of "fresh marijuana, unburnt marijuana" coming from the defendant's vehicle); United States v. Peltier, 217 F.3d 608, 610 (8th Cir. 2000) (officer had probable cause for a warrantless search of a truck when an odor of burnt marijuana came from the cab). More specifically, the smell of marijuana emanating from a motor vehicle establishes "probable cause to search the entire vehicle for drugs and drug paraphernalia," United States v. Smith, 990 F.3d 607, 612 (8th Cir. 2021), including searching the containers in the vehicle, United States v. Winters, 221 F.3d 1039, 1042

7

(8th Cir. 2000) (officer smelled "raw marijuana"). See also United States v. Smith, 789 F.3d 923, 928 (8th Cir. 2015) ("This court has held numerous times that the smell of marijuana coming from a vehicle during a proper traffic stop gives an officer probable cause to search for drugs"); United States v. Woods, 829 F.3d 675, 680 (8th Cir. 2016) (extension of a traffic stop was justified by several factors, including the officer's "detection of the odor of marijuana in [the] vehicle").

Furthermore, an occupant's nervous behavior can support reasonable suspicion of criminal activity and justify an officer extending a traffic stop to investigate further. United States v. Davis, 943 F.3d 1129, 1133 (8th Cir. 2019) (finding the driver's nervous behavior, furtive movements, the absence of the vehicle's owner were sufficient to justify extending the traffic stop); U.S. v. Riley, 684 F.3d 758, 763 (8th Cir. 2012) (driver's "undue nervousness[,]" vague or conflicting answers, and misrepresentations to officer supported a reasonable suspicion of criminal activity).

**1. Vehicle Stop**

Defendant contends in his motion that he did not commit any traffic violations and therefore Officer Alfaro had no basis to stop his vehicle. The Government asserts in response that Defendant failed to maintain his lane and signal when turning, providing Officer Alfaro with sufficient probable cause to stop Defendant.

Officer Alfaro testified at the hearing that he stopped Defendant's vehicle because the vehicle was speeding, failed to signal appropriately, and exhibited erratic driving. Officer Alfaro also described the area where he first observed Defendant as experiencing problems. Defendant, in general, testified that Officer Alfaro pulled him over for "no reason." He did not, however, deny Officer Alfaro's specific claims that he witnessed erratic driving or speeding over the posted 35 mile-per-hour limit. Both Officer Alfaro and Defendant agreed that Defendant was driving in Troy, Missouri early in the morning of November 10. Defendant and Officer Alfaro also appear

8

to agree that Defendant pulled into a parking lot off Highway 47 and made a U-turn to travel back in the direction he had moments before travelled from.  Defendant acknowledged he was lost as he was driving.  Defendant also admitted that he did not have a valid driver's license.

Defendant contends that Officer Alfaro lacks credibility and therefore the Court should reject his testimony.  At the hearing, Defendant focused on the lack of body camera footage as a basis for disbelieving Officer Alfaro. Aside from Defendant's testimony, Defendant has not produced any evidence demonstrating the existence of any body camera footage and the Court finds credible Officer Alfaro's testimony that no in-car camera or body camera footage was available.

Defendant contends that Officer Alfaro's credibility is damaged by his failure to "attempt [to] obtain any camera footage of the incident despite testifying that a physical altercation occurred…."  Defendant, however, has not presented the Court with any authority supporting a finding that Officer Alfaro had a duty to investigate the existence of this alleged evidence, such that failing to do so undermines his credibility.  As a court recently stated when faced with a similar argument, "[t]o the extent Plaintiff also argues that a lack of body camera footage supports his position, a lack of evidence is not evidence…." Fuentes v. Schemmer, No. 18-CV-08207 (PMH), 2023 WL 188739, at * 5 fn. 5 (S.D. N.Y. Jan. 13, 2023); see also United States v. Slater, No. 21-cr-106 pp,  2022 WL 558097, at *28 (E.D. Wis. Feb. 24, 2022 (court rejected defendant's contention that deleted body camera footage supports motion to suppress where "defendant infers ill intent or malicious motive from these facts but does not explain how they demonstrate that the manner of the search, and of his apprehension, was unreasonable."); United States v. Macklin, 819 Fed. Appx. 372, 376-77 (6th Cir. 2020) (deferring to the district court's determination that the arresting officer's testimony was credible despite officer's inadvertent deletion of in-car camera

9

footage of the traffic stop).

The Court credits Officer Alfaro's testimony that Defendant's actions in the early morning of November 10 violated traffic laws. Because Officer Alfaro properly stopped Defendant, he had the right to speak to Defendant and request identification. Defendant does not deny that he did not possess a valid driver's license on November 10.  Rather, he simply contends he had a valid reason for not possessing a driver's license.  In addition, Defendant does not deny that there was an altercation between him and the officers. Because Officer Alfaro had reasonable suspicion to conduct a stop of Defendant's vehicle and to extend the stop, the Court concludes that Defendant's Fourth Amendment rights were not violated.

2. **Vehicle Search**

In his Motion [ECF No. 31], Defendant contends that even if a traffic violation occurred, law enforcement officers "illegally detained [Defendant] after the traffic stop without cause." In his supplemental brief following the hearing, Defendant additionally argues that a marijuana smell alone "may be a factor, but not a stand-alone one, in evaluating the totality of the circumstances for purposes of determining whether police had probable cause to conduct a warrantless search," relying on Commonwealth v. Barr, 240 A.3d 1263 (PA 2020).

The Government asserts that smell of marijuana and the presence of the burnt marijuana provided officers a basis to "prolong the stop and ask Defendant to exit the vehicle." [ECF No. 39] The Government additionally notes that Defendant's nervous behavior supported extending the traffic stop. In addition, Defendant's attempt to drive off when he was directed to exit his vehicle contributed to probable cause for his arrest and search of the vehicle. Finally, the Government contends that officers validly conducted an inventory search following Defendant's arrest.[4]

---

[4] Because the Court determines that the stop was proper and the smell of marijuana as

The Government introduced two photographs at the hearing that support the likelihood that Officer Alfaro smelled marijuana when he spoke with Defendant at Defendant's vehicle. Officer Alfaro testified that the photographs depicted burnt marijuana. Defendant acknowledged that the photo depicting ashes in an ashtray was accurate but asserted the photograph depicting a burnt marijuana cigarette was "staged." In general, Defendant claimed during his testimony that Officer Alfaro had ulterior motives for stopping his vehicle, namely Defendant's race. However, as the Eighth Circuit has held, "once an officer has probable cause, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." United States v. Fuchrer, 844 F.3d 767, 772 (8th Cir. 2016) (citation omitted) cert. denied, 137 S. Ct. 2107 (2017). See also Whren v. U.S., 116 S. Ct. 1769, 1774, 517 U.S. 806, 813 (1996) (an officer's motivations are ordinarily irrelevant for probable-cause Fourth Amendment analysis and, thus, allegations of selective enforcement of laws based on race are not properly challenged through the Fourth Amendment). Here, the totality of the available credible evidence, including the smell and presence of burnt marijuana; Defendant's nervous behavior; and Defendant's attempt to flee, establishes a valid basis for the search of the vehicle following a lawful stop.

Accordingly, the undersigned recommends denial of the Defendant's Motion to Suppress Evidence and Statements.

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence and Statements [ECF No. 31] be **DENIED**.

**The parties are advised that they have fourteen (14) days after service of this Report**

---

well as Defendant's behavior supports a search of the vehicle, the Court declines to consider the validity of an inventory search.

11

**and Recommendation in which to file written objections to it**, unless an extension of time for good cause is obtained.  Failure to file timely objections may result in a waiver of the right to review.  See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990) (per curiam); 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59.

This matter will be set for trial at a later date before the Honorable Audrey G. Fleissig, United States District Judge.

                                                                                         _____
                                                                                         PATRICIA L. COHEN
                                                                                         UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of March, 2023